IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:14-cv-63-RLV
(5:11-cr-22-RLV-1)

| | |
|---|---|
| CESAR SIERRO-PINEDA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response in Opposition, (Doc. No. 8), and on the Government's Motion for Extension of Time, (Doc. No. 7).

**I. BACKGROUND**

Beginning in 2009, the Rowan County Sheriff's Office conducted an investigation into cocaine, methamphetamine, and marijuana trafficking in Iredell, Yadkin, Wilkes, and Rowan counties. (Crim. Case No. 5:11-cr-22, Doc. No. 62 at 5: PSR). The investigation led to the arrests of coconspirators Henry Clay Randleman and Jason Scott Holbrook. (Id.). Subsequent cooperation from Randleman led the investigation to Hildeberto Gonzalez-Chavez, one of the drug suppliers. (Id.). After Gonzalez-Chavez's arrest, the police continued their investigation to the home of Edgar Santana, who admitted to receiving crystal methamphetamine from Petitioner Cesar Sierro-Pineda. (Id. at 6).

Based on information obtained through subsequent investigation, Petitioner was arrested and a search warrant was executed at his house on February 25, 2011. (Id.). The search revealed 158

1

grams of methamphetamine and a Taurus .40 caliber handgun. (Id.). Additionally, officers discovered five gallons of liquid methamphetamine that was in the process of being converted to crystal methamphetamine. (Id.). A separate but related investigation in Texas also revealed that Petitioner was responsible for 6.5 kilograms of methamphetamine seized on November 8, 2010, when Andrea Brito was caught trying to smuggle the drug into the United States near Laredo, Texas. (Id.). Brito told authorities that Petitioner had recruited her and paid for the vehicle she used to smuggle the drugs. (Id.). Subsequent interviews with Brito also revealed that she had transported narcotics for Petitioner from Georgia to South Carolina on five different occasions. (Id. at 7). Combining both investigations, Petitioner was responsible for 5.99 kilograms of actual methamphetamine. (Id.).

The grand jury in the Western District of North Carolina charged Petitioner in a two-count superseding bill of indictment on August 16, 2011, with conspiracy to distribute and possess with intent to distribute cocaine and methamphetamine, in violation of 21 U.S.C. §§ 841 and 846; and possession of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). (Id., Doc. No. 40: First Superseding Bill of Indictment). Petitioner entered into a plea agreement in which he agreed to plead guilty to the drug conspiracy. (Id., Doc. No. 47 at 1: Amended Plea Agreement). In exchange, the Government agreed to dismiss the firearm count, as well as charges in a separate bill of indictment filed in the Southern District of Texas. (Id.).

In his plea agreement, Petitioner acknowledged that the statutory range for count one was a mandatory minimum of ten years with a maximum of life imprisonment. (Id. at 2). The plea agreement also contained a joint recommendation that the base offense level should be 38 and that he should receive a role enhancement pursuant to § 3E1.1(b) of the guidelines, as well as

2

any other applicable enhancements. (Id.). Petitioner acknowledged that the sentencing court would consider the advisory sentencing guidelines but that any estimate of the likely sentence "is a prediction rather than a promise." (Id.). Lastly, the plea agreement included a provision stating that "[t]he Defendant understands that no one can predict to a certainty the effect of the Defendant's conviction(s) on the Defendant's immigration status and wants to plead guilty regardless, even if the consequence is the Defendant's automatic removal from the United States." (Id. at 5).

On September 27, 2011, Petitioner appeared before U.S. Magistrate Judge David S. Cayer and pled guilty to the drug conspiracy count, consistent with the terms of his plea agreement. (Id., Doc. No. 102 at 4: Tr. of Rule 11 Hrg.). During the hearing, Petitioner admitted that he had discussed the content of the indictment with his attorney. (Id.). Petitioner also confirmed that he fully understood that the charge carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. (Id.). Petitioner acknowledged that his attorney advised him that his guilty plea may have adverse immigration consequences and could result in deportation. (Id.).

With respect to the guidelines, Petitioner answered in the affirmative when the magistrate judge asked whether his attorney discussed how the sentencing guidelines may apply to his case. (Id. at 5). Petitioner also acknowledged that if the sentence was more severe than he expected he would still be bound by his plea. (Id. at 5-6). Finally, Petitioner stated that he was satisfied with the services of his attorney, and his attorney confirmed that Petitioner understood the terms of the plea agreement. (Id. at 13-14). After hearing Petitioner's answers, the magistrate judge accepted the plea, concluding that it was knowingly and voluntarily made. (Id. at 14).

In preparation for sentencing, the probation officer prepared a presentence investigation

3

report, calculating an advisory guidelines range of life in prison based on a total offense level of 43 and a criminal history category of I. (Id., Doc. No. 62 at 12). In calculating the offense level, the probation officer found Petitioner responsible for 5.99 kilograms of actual methamphetamine, nearly four times the amount required for a level 38, the highest base offense level under guidelines § 2D1.1. (Id. at 7). After applying enhancements for possession of a firearm, importation of methamphetamine, maintaining a premise for manufacturing narcotics, and leadership, the probation officer calculated a total offense level of 48, reduced it by three levels for acceptance of responsibility, and then defaulted to a level 43, which is the maximum offense level available on the sentencing chart. (Id. at 8).

This Court conducted a sentencing hearing on December 5, 2012, in which it further examined Petitioner regarding his understanding of the plea agreement. This Court asked Petitioner if he wanted to continue with current counsel after recognizing Petitioner asked in previous hearings to have a new attorney. (Id., Doc. No. 106 at 3: Tr. Sent'g Hrg.). In response, Petitioner declined this Court's offer, stated that he wanted to continue with current counsel, and affirmed that he was fully satisfied with her services. (Id. at 3-4). Additionally, this Court asked Petitioner once again if he understood the possible penalties against him and confirmed that Petitioner understood that a conviction could lead to deportation. (Id. at 4). This Court also confirmed that Petitioner had reviewed the presentence report with counsel and that he understood it. (Id. at 5). After hearing from the parties and receiving evidence related to a series of objections, this Court adopted the advisory guidelines range of life in prison set forth in the presentence report. (Id. at 50). Defense counsel argued for a downward variance sentence of 20 years in prison, while the Government recommended life imprisonment. (Id. at 51-59; 61-67). At the hearing, the Government explained that it "did a reverse proffer" with Petitioner and

"advised him that he was going to get a life sentence, but that his one chance was to cooperate." (Id. at 63). As the Government explained, however, Petitioner "decided not to cooperate." (Id.). After hearing from both sides, this Court sentenced Petitioner to a term of life imprisonment, citing the seriousness of the offense and characterizing Petitioner as the "kingpin" in a case involving the importing and distributing of large quantities of drugs. (Id. at 70-74).

This Court entered judgment on December 7, 2012, (Id., Doc. No. 92: Judgment), and Petitioner filed a timely notice of appeal six days later. (Id., Doc. No. 94: Notice of Appeal). On November 7, 2013, the United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment in an unpublished, per curiam opinion, in part, rejecting Petitioner's argument that his guilty plea was not knowing and voluntary. Petitioner did not seek a writ of certiorari from the Supreme Court but placed the instant motion to vacate in the prison mailing system on April 22, 2014, and it was stamp-filed in this Court on April, 30, 2014. In his motion, Petitioner asserts a long list of claims involving the advice he received before entering into his plea agreement. (Doc. No. 1-1). Specifically, Petitioner claims: (1) counsel advised him to plead guilty based on her belief he would only receive five to six years in prison, without explaining the potential for a life sentence; (2) counsel failed to explain the sentencing guidelines, the preponderance of the evidence standard for sentence enhancements, and the potential application of these enhancements to Petitioner's sentence, including relevant conduct; (3) counsel failed to advise Petitioner of the deportation consequences of his conviction; and (4) his guilty plea was not knowing and voluntary. (Id.).

A.  **STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits ad the record of prior

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and Respondent's response, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B. **DISCUSSION**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

1. Petitioner's Contention that Counsel told him He Was Facing only a Five- to Six-Year Sentence

Petitioner first contends that counsel told him that he was facing a five- to six-year sentence and that if he had been properly informed that he faced a life sentence he would have gone to trial.  Petitioner's claim that he was unaware of the potential sentence he faced and was advised he would receive a sentence of five to six years is belied by his sworn statements at the Rule 11 hearing and is not believable when considered against the record.  Petitioner was advised during his plea hearing that he faced a statutory range of ten years to life in prison and Petitioner acknowledged that he understood the applicable penalties.  Petitioner also signed a plea agreement that recited the statutory range of ten years to life in prison and recommended a base offense level of 38, plus a leadership enhancement as well as any other enhancements.  Based on the joint recommendations in the presentence report alone, Petitioner faced a guidelines range in excess of twenty years.  At the Rule 11 hearing, Petitioner verified that he had reviewed the plea agreement with counsel and understood its terms.  Petitioner's sworn statements and signed plea agreement conclusively demonstrate that he was aware he was facing a sentence well in excess of five or six years, and his claim, therefore, fails.  See Lemaster, 403 F.3d at 222-23.

Moreover, Petitioner's assertion that he was told he was facing five to six years in prison is incredible based on a review of the record.  Petitioner maintains that counsel continued to advise him that he was facing a five- to six-year sentence all the way up until the day of sentencing. (Doc. No. 1 at 6; Doc. No. 1-2 at 8: Pet. Aff.).  At that point, Petitioner faced a statutory mandatory minimum of ten years in prison, and the probation officer had calculated a guidelines range of life based on an offense level that was literally off the chart.  Furthermore, as the record made clear, Petitioner had declined the chance to cooperate prior to sentencing, removing any possibility of a motion for downward departure under 18 U.S.C. § 3553(e).  In a statement that Petitioner has not challenged, the Government explained during the sentencing

hearing that it had previously met with Petitioner and advised him that he faced life in prison if he did not cooperate, which, as the record shows, he elected not to do. On this record, it is unbelievable that counsel would have told Petitioner that he was facing only five to six years in prison. Additionally, counsel's argument on behalf of Petitioner for a twenty-year prison sentence provides additional evidence that his self-serving claim is untrue. Simply put, Petitioner's allegation regarding the predicted sentence is not only contradicted by his own sworn statements, but it is also unbelievable given the facts of his case.

      2. Petitioner's Contentions Regarding Counsel's other Alleged Failures.

      In addition to his contention that counsel told him he was only facing five or six years in prison, Petitioner also includes an extensive list of legal procedures that he claims counsel failed to explain to him. As with his claim regarding the predicted sentence, Petitioner's claims regarding counsel's alleged failures are contradicted by his sworn statements at the Rule 11 hearing. In his sweeping list of alleged failures, Petitioner claims that counsel failed to explain the alternatives to pleading guilty; advise him of the statutory maximum sentence; discuss the plea agreement; explain the operation of the sentencing guidelines; discuss the possibility of sentencing enhancements; explain the relevant conduct standard; and advise him that a preponderance of the evidence standard would apply at sentencing.

      In direct contradiction to his allegations, Petitioner was explicitly advised and acknowledged under oath at the Rule 11 hearing that he understood he had the right to "plead not guilty, to have a speedy trial before a judge and jury, to summon witnesses to testify in [his] behalf, and to confront the witnesses against [him]," (Id., Doc. No. 102 at 6-7); that he understood he faced "a mandatory minimum of ten years to life imprisonment," (id. at 4); that, after the Government summarized the term of his plea agreement, he "understood" the terms and

8

"agree[d]" with those terms, (id. at 13); that he had "spoken with [his] attorney about how the U.S. Sentencing Guidelines might apply to [his] case," (id. at 5); and that he understood he would "still be bound by [his] plea" if the sentence were more severe than he expected, (id.). Petitioner's self-serving allegations in his motion to vacate and affidavit are insufficient to overcome the presumption of veracity that accompany his sworn statements at the Rule 11 hearing, many of which he repeated or expressly adopted again before this Court at the sentencing hearing.

    3. Petitioner's Contention that He Was not Advised about the Possible Deportation Consequences of his Conviction.

Petitioner also alleges that had he been properly informed that his sentence carried the potential for deportation, he would not have pled guilty and would have gone to trial. Like all of Petitioner's claims, these self-serving allegations are directly contradicted by the record and his sworn statements. Here, Petitioner was advised that a conviction could result in deportation by the magistrate judge and this Court and acknowledged his understanding. First, Petitioner affirmed before the magistrate judge under oath during his Rule 11 hearing that he understood he may be deported as a result of his offense. (Id., Doc. No. 102 at 5). Second, Petitioner reaffirmed this answer before this Court during his sentencing hearing when he was asked again whether he understood he may be deported as a result of his conviction. (Id., Doc. No. 106 at 4). Moreover, Petitioner's plea agreement contained an acknowledgment that he understood his sentence carried the potential for deportation and confirmed he "want[ed] to plead guilty regardless, even if the consequence is [Petitioner's] automatic removal from the United States." (Id., Doc. No. 47 at 5: Amended Plea Agreement). Petitioner's claim that he was ignorant of the deportation consequences of his conviction is simply contradicted by the record.

4. Petitioner's Contention that His Guilty Plea Was not Knowing or Voluntary.

Finally, Petitioner seeks to cast doubt on his sworn declarations at the Rule 11 hearing by claiming that his guilty plea was not knowing and voluntary. As an initial matter, Petitioner has not carried his burden of rebutting his sworn statements at the Rule 11 hearing, at which he affirmed his understanding of the process, admitted that he was in fact guilty, and stated unequivocally that he wished to plead guilty. Not only is Petitioner's claim without merit, but it is also barred. In his pro se appellate brief, Petitioner raised the same claim he now presents in his motion to vacate, contending that his guilty plea was not knowing and voluntary. In its opinion affirming Petitioner's conviction, the Fourth Circuit rejected Petitioner's claim, concluding that it lacked merit. It is well-established that a petitioner may not seek to relitigate issues in a motion to vacate that have been decided on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, Petitioner's challenge fails both because it is without merit and because it is barred by the relitigation doctrine.

C. **CONCLUSION**

For the reasons stated herein, Petitioner's § 2255 petition is denied and dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 motion, (Doc. No. 1), is denied and dismissed with prejudice.

2. The Government's Motion for Extension of Time, (Doc. No. 7), is **GRANTED** nunc pro tunc.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 14, 2014

Richard L. Voorhees
United States District Judge